## Johnson's Appeal.

The testatrix devised certain real estate to her executors, to be held in trust by them to pay over the rents, issues and profits to her son for life, and then disposed of the remainder as follows: " and upon and immediately after the death of my son, to assign, grant and convey the said real estate to such person or persons, and for such estate or estates, and in such proportions as would, by the intestate laws of this Commonwealth, be entitled to the same, if he had died intestate seised thereof in fee." After the death of the testatrix the son adopted a child under the provisions of the Act of May 4th 1855, and subsequently died, leaving this adopted child but no issue. *Held*, that this adopted child was entitled to the estate.

[Johnson's Appeal.]

January 14th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas, No. 4, of *Philadelphia county:* Of January Term 1878, No. 154. In Equity.

Appeal of Ann B. F. Johnson, by her guardian, from the decree of the court dismissing her bill in equity.

By her will, dated March 13th 1857, Mrs. Jane Johnson devised to testamentary trustees certain real estate in Philadelphia in trust, to collect the rents and profits thereof and to pay them over to her son, Samuel B. Johnson, for and during the term of his natural life, the same not to be subject to any debts or liabilities contracted by him, and immediately after his death to grant and convey the said real estate to such person or persons for such estate and in such proportions as would, by the intestate laws of this Commonwealth, be entitled to the same if he, the said Samuel had died intestate, seised thereof in fee. Other parts of her estate were similarly disposed of, in trust for three other sons. Her residuary estate was devised and bequeathed to trustees upon like trusts, for the benefit of her four sons for life, with a similar limitation of the remainders in each to such persons as would, by the intestate laws of Pennsylvania, be entitled to the same, if the sons had respectively died intestate, seised in fee. By a codicil the testatrix restricted the amount of income to be paid to her son, Samuel, to such sums as the trustees might, in their own discretion and judgment, think proper and conclusive to his welfare, and not to his injury.

On the 8th of May 1875, Samuel B. Johnson applied to the Court of Common Pleas for permission to adopt Ann Booth Francis (the complainant), under the provisions of the Act of May 4th 1855, Purd. Dig. 61, which petition having been assented to by the minor and her mother, was duly granted, and it was decreed, in accordance with the act, that she should have "all the rights of a child and heir of the said Samuel B. Johnson." Ann Booth Francis was a stepdaughter of Samuel B. Johnson, being a daughter of his wife by James Francis, her former husband. Samuel B. Johnson died December 18th 1876, leaving a widow and no child, except his adopted daughter, the complainant.

The case was heard on bill and answer, and the court, Thayer, P. J., in an opinion, said:

" The question to be decided upon the pleadings is, whether the fee in that portion of the estate of the testatrix which was devised and bequeathed in trust for Samuel B. Johnson for life, has vested in the complainant, his adopted daughter, or has passed under the will to his surviving brothers and the children of his deceased brothers.

" It is clear that whoever is to take the remainder is to take as a purchaser under the will of Jane Johnson, and not by descent as the heir of her son. The son may be said to have been a purchaser

[Johnson's Appeal.]

as to his life interest, for, although at common law a devisee, who takes by the will precisely the estate. that would have been cast upon him by descent is in by descent and not by purchase, yet the case is different where there is a difference in quantity between the estate which the devisee would take as heir and that which he takes under the devise : Kinney *v.* Glasgow, 3 P. F. Smith 143 ; Reading *v.* Royster, 1 Salk. 242. But as purchaser he only took an equitable life estate. He had nothing in it which could descend to his heirs. The fee remained in the trustees for the remaindermen, to whom it was given by the will, and these remaindermen are described as ' such person or persons as would, by the intestate laws of this Commonwealth, be entitled to the same if the said Samuel had died intestate, seised thereof in fee.' What persons were intended by Mrs. Johnson by these words, for it is the intention of the *testatrix,* and her intention alone which is to prevail ? We think those persons were intended who would have been entitled under the Intestate Act of 1833. That act is entitled ' An Act relating to the descent and distribution of the estates of intestates.' This is what is usually understood by the intestate law of Pennsylvania. It is commonly called the intestate law, sometimes the statute of distributions. It is in itself a complete code of laws upon the subject to which it relates. Its provisions are in accord with the general sentiment of the people of this state upon that subject, and are founded in nature and reason. It gives the property of an intestate to his kindred, commencing with the nearest in degree, and scrupulously confines the descent of real estate to those who are of the blood of the ancestor from whom it descended, or by whom it was devised. By this law any estate derived from the mother would, upon the death of any one of her sons, go to those of her own blood, to her surviving sons, and to her grandchildren and granddaughters, the children of her deceased sons. Can it be believed that she intended that any part of it should go to strangers to her blood, or, least of all, that it should go to an appointee of a son whom she had tied up by the most rigid trusts, whom she had deprived of the least control over both the corpus and income during his life, and of all disposition of it after his death ? Can she be supposed to have intended that her son should designate the heir who should succeed to her estate, when she deprived him not only of all power of appointment, but of any control whatever ? Could she have intended to commit the future disposition of the estate, or of any part of it, to her son's discretion when she expressly deprived him of all discretion and power even over that which he was to enjoy himself, and subjected him absolutely, even as to the receipt of income, to the discretion and judgment of her trustees ? It is impossible for us to believe this, for it is contrary to the whole spirit and tenor of her will.

[Johnson's Appeal.]

"But it is said that, however improbable this may be deemed, the testatrix must have intended that which she has said, that she has by express words limited the remainder to such person as would be entitled to the same by the intestate laws, if Samuel B. Johnson had died intestate, seised thereof in fee; that if Samuel B. Johnson had died intestate and seised thereof in fee, the complainant, his adopted daughter, would, under the Adoption Act of May 4th 1855, have been entitled to the estate. But the argument leaps to a conclusion which is totally unwarranted by law. If Samuel B. Johnson had died intestate and seised in fee, it by no means follows that the complainant would have inherited this estate. It would have been necessary, in that event, to have inquired from whom the estate descended, or by whom it had been given or devised to him, for the ninth section of the Act of April 8th 1833 would have excluded from the inheritance all persons who were not of the blood of the perquisitor. There is not the slightest pretence to say that the Act of 4th of May 1855, relative to adoption, has repealed or modified in the least degree this fundamental rule of the law of descents, as fixed by the intestate law of this state. It would require the plainest and most express language, or the most absolute and necessary implication, to repeal a rule of inheritance so deeply imbedded in our law as this. There is nothing in the Act of 1855 which lends countenance to the supposition that it was the intention of the legislature to disturb in the least this long-established canon of descent. The act declares that such adopted child shall have all the rights of a child *and heir of the adopted parent.* It gives to the adopted child the right to inherit from the adopting parent, but always subject to the rules of inheritance laid down by the intestate law. It does not repeal the ninth section of the Act of April 8th 1833, which demands the indispensable qualification of blood to enable her to inherit an estate coming to the adopting parent by descent or devise. As was said by Mr. Justice Strong, in Schafer *v.* Enue, 4 P. F. Smith 306, 'the statute of 1875 does not attempt the impossibility of making the adopted person the child of the adopted parent. It gives to such person the rights of a child without being a child.' That is, the right to inherit from the adopting parent an estate of which he is the true *perquisitor.* But there is no ground to allege that an adopted child, not of the blood of the ancestor from whom the estate is derived, could inherit such an estate from his adopting parent.

"The argument therefore that the complainant is entitled to this estate because if her adopted father, Samuel B. Johnson, had died intestate seised in fee, she would have taken from him, is founded in an erroneous conclusion. She could not have inherited an estate derived to him by descent or devise from his ancestor, unless she was herself of the blood of that ancestor. When Mrs. Johnson, therefore, by her will gives the remainder to such person or persons

as would by the intestate laws be entitled to the same, if her son Samuel had died intestate seised thereof in fee, her words must be construed with reference to the facts of the case, and the words ' had died intestate seised thereof in fee,' must be taken to mean the same as if she had said died intestate seised thereof in fee of an estate derived from herself.

"That the Act of 1855 confers only a limited right upon an adopted child, and does not substitute him in' the place of a real child under the intestate laws, is proved by the decision in Commonwealth *v.* Nancrede, 8 Casey 389, where it was held that a child by adoption is subject to the payment of the collateral inheritance tax, and Tharp *v.* Commonwealth, 8 P. F. Smith 500, is to the same effect. There is an analogy between the Act of May 4th 1855, relative to adopted children, and the Act of 27th April 1855 (Purdon 810), which enables illegitimate children to inherit from their mother and *vice versa.* That act declares that they shall have capacity to take and inherit from each other personal estate as next of kin and real estate as heirs in fee-simple. In Grubb's Appeal, 8 P. F. Smith 55, it was held that the next of kin of the mother could not under this act inherit as heirs of the child, in other words, the act was held to have no operation in altering the intestate laws beyond the letter of the statute. A like rule may with propriety be applied to the Act of May 4th 1855. The application of that rule, while it gives the adopted child the right to inherit from the adopting parent, would exclude the possibility of such child inheriting from an ancestor of the adopting parent, and preserve intact the rule always so zealously maintained in this state, that one who claims an estate descended to or devised to an intestate must show himself heir to him by whom it was devised, or from whom it descended as *perquisitor.*

"When Mrs. Johnson therefore directed that the estate, the income of which was to be appropriated during his life to the maintenance of her son, should after his death go to such persons as would by the intestate laws be entitled to the same if he had died intestate, seised thereof in fee, she cannot be supposed to have intended that the estate should be taken out of the ordinary rules of descent prescribed by the intestate laws, and she must be presumed to have known that such an estate derived from her must be confined in its descent to heirs of her own blood. That this was her true intention, and that she did not contemplate the possibility of its being diverted from her own kindred to a stranger by any act of the son, we think is plainly apparent from the whole will. We have considered the question exclusively in respect to the real estate devised by the testatrix. We are of opinion that the same result would follow as to any personalty which might be embraced in the residuary estate, for it is obvious she intended the same persons to take both. But it is unnecessary to decide this, because the

bill, while suggesting the possibility of some personal estate being comprehended in the residuary estate, does not explicitly charge that any such personal estate came to the hands of the trustees

" Bill dismissed with costs."

From this decree this appeal was taken.

*W. H. Drayton*, for appellant.—The language used, viz. : " Upon the death of my son Samuel, to such person or persons, for such estate or estates and in such proportions as would, by the intestate laws of this Commonwealth, be entitled to the same if he had died intestate seised thereof in fee," has been judicially construed to mean his heirs: Dodson *v.* Ball, 10 P. F. Smith 492, 500; which construction has been repeated in Yarnall's Estate, 20 Id. 335; Gaul's Estate, 30 Id. 348.

To these words " heirs or heirs of the body" the law attaches a definite meaning. They are words of limitation and not of purchase. That the testator did not foresee all the consequences of his disposition is not a reason for varying it, &c. : Rules of Construction, Jarman on Wills, vol. 2, *p. 743, rule 13. When a testator uses technical words he is presumed to use them in their legal sense :" Id., rule 12.

The right to inherit is all we claim, but not this right narrowed to personal acquisitions of parent. The Act of 1855 cannot divest a vested right, and does not give up any right of the Commonwealth, either in terms or by any clear intent. No other reservation is to be presumed by law, and the terms used " have all the rights of a child and heir of such adopting parent," should, except as to the rights of the state, be construed literally. If these broad terms need any incidental implication of intent this is found in the proviso that if there are other children the adopted shall share with them in case of intestacy, and that they shall inherit from and through each other as if all had been lawful children of the same parent. Does not this proviso show the legislative intent to make the statute as general as possible ?

Almost all the Acts of Assembly legitimating adopted children have been special, and this Act of 1855 is general. Most of our analogies are thus necessarily taken from special statutes, but this court said, in Tharp *v.* Commonwealth, 8 P. F. Smith 500, that there is no essential difference between a special act making one an heir and the general Act of May 1855. See McGunnigle *v.* McKee, 27 P. F. Smith 81; Killam *v.* Killam, 3 Wright 120; Opdyke's Appeal, 13 Id. 373, as to the construction of these special statutes. The construction invoked does not in the slightest respect impugn the decision of this court in the class of cases represented by Schafer *v.* Eneu, 4 P. F. Smith 304, or Commonwealth *v.* Nancrede, 8 Casey 389.

Schafer *v.* Eneu was the case of a will made before the Act of

[Johnson's Appeal.]

1855, designated unmistakably, in technical terms of purchase, the kind of children intended by the testator, and vested the remainder in default of children.   Commonwealth *v.* Nancrede decided what is too well settled to admit of dispute, that the state parts with none of her rights in any act, unless the act is a contract, or she is expressly named as yielding her right, or clearly intends to do so.

*George Junkin,* for appellees.——If the words of the will can ·be considered as of doubtful construction, the law presumes that it was the intention of the testatrix to devise the estate to her kindred : Findlay *v.* Riddle, 3 Binn. 149 ; Reck's Appeal, 28 P. F. Smith 432 ; Howitz *v.* Norris, 10 Id. 267 ; Provenchere's Appeal, 17 Id. 463 ; Barclay *v.* Lewis, Id. 320.

In the present case, it is clear, whoever takes the remainder takes by purchase, and not by descent.   They do not take as the heirs of Samuel, but as specific objects of the bounty or good-will of the testatrix upon some consideration moving from them to her or her to them.   She selects a class who are to take at the death of her son, and she designates that class as described " in the intestate laws of this Commonwealth."

The Act of 1855 is not a general law.   It does not directly or indirectly interfere with the general provisions and principles of the intestate laws of the Commonwealth, viz., the Act of 1833.   It says, that one being the owner of an estate in his own right, and being competent to will it as he pleases, may bring in any stranger to his blood, and give that stranger the right to an equal share of the inheritance from him.   It is his, and he may thus divide it as he chooses.   But, he and his are thus outside of the general intestate laws.   The child adopted shall " share the inheritance."   What inheritance ?   Surely, that which it is his to bestow, and which comes from him.   It merely provides for the adopted child's inheritance from the adopting parent.

The act did not make the testatrix, Jane Johnson, an ancestor of the plaintiff, to whose kindred any estate could ascend from the artificial child, and on the other hand ought not to be held to make her a descendant of the testatrix.   If this child takes, without regard to existing laws, and is held to be a lineal descendant of the testatrix, she may, with equal propriety, claim in course of time, not only the estate of her adopting parent coming from his ancestors, but in the capacity of a brother's " child," claim the estate of any of his brothers, who might die intestate without lineal descendants. This would be a strange anomaly.

Mr. Justice GORDON delivered the opinion of the court, February 3d 1879.

Mrs. Jane Johnson, by her will, probated November 15th 1862, devised to her executors, the appellees, the property in question, to

be by them held in trust, to collect the rents, issues and profits thereof, and pay the same over, after deducting taxes and other necessary expenses, to her son, Samuel B. Johnson, for and during the term of his natural life. After thus having clearly indicated the use to which the property should be appropriated during the life of her son, she, in a very succinct and intelligible manner, disposes of the remainder as follows, to wit:

"And upon and immediately after the death of my son, Samuel B., to assign, grant and convey the said real estate to such person or persons, and for such estate or estates, and in such proportions, as would, by the intestate laws of this Commonwealth, be entitled to the same if he had died intestate seised thereof in fee."

In all this the intent of the testatrix is unmistakable: her main object is to provide for her son for life; this covers her principal anxiety, as will appear by the will itself, made in 1857, as well as by the codicil executed some five years thereafter. After he is gone, her chief intent is fulfilled, and she casts the remainder over to the disposition of the intestate laws, to go not to any particular class, stalk or stirp, and not to her blood, near or remote, but to such *person* or *persons* as would, by the above-named laws, be entitled to the same, had Samuel B. Johnson died intestate and seised thereof in fee.

Suppose, then, he had died intestate, seised in fee of this disputed property, who, under the intestate laws of this Commonwealth, would be entitled to the same? Certainly his adopted child, Ann B. F. Johnson. If not, then is the Act of 1855 of no force; for it declares that, upon fulfilment by the parties interested of the requisites prescribed, the court shall decree "that such child shall assume the name of the adopting parent, and have all the rights of a *child* and *heir* of such adopting parent, and be subject to the duties of such child." Thus we see that the appellant is, so far as legislative power can so make her, both child and heir of Samuel B. Johnson, and if notwithstanding she yet cannot inherit her adopted father's estate, it is because the courts, under the name of judicial interpretation, have repealed the statute.

She is not, it is argued, of the blood of the testatrix, and therefore the testatrix did not intend to vest in her this remainder. But this is an imaginary intent, evolved for the occasion—one which Mrs. Johnson, if we regard her words, never entertained. She is careful to use no word by which the operation of the intestate laws might be limited: to such *person* or *persons* as would, by the intestate laws of this Commonwealth, be entitled to the same, had he died intestate seised thereof in fee, is her emphatic language, twice repeated in this same will. There is, therefore, nothing left for conjecture.

If, as was said by our brother MERCUR, in McGunnigle v. McKee,

7 NORRIS—23

[Johnson's Appeal.]

27 P. F. Smith 81, one who makes a will is presumed to act in view of the power of the legislature to legitimate a bastard and make it an heir, much more will it be presumed that one making a will acts in view of laws already made, by which a child may be adopted and thus made an heir.

One of two things may be regarded as reasonably certain in this case: either Mrs. Johnson did know and understand the intestate laws, to which she so distinctly and emphatically refers, and so must have known that her son had the power to introduce into the succession one not of her blood, or she was indifferent as to what might become of the residue of her estate after her son's death, and therefore intrusted the disposition thereof to those laws, without caring to inform herself particularly concerning their provisions. In the one case, she acted in view of the possible occurrence of what has happened, and in the other, she cared not what the result might be; in either case, nothing remains but to give her words their legal and reasonable meaning and force, and thus invest the appellant with the title and possession of the property which rightfully belongs to her.

It is now ordered, adjudged and decreed, that the decree of the court below dismissing the plaintiff's bill with costs, be now reversed and set aside; and that so much of the estate late of Mrs. Jane Johnson, deceased, as was by her will vested in trustees during the life of Samuel B. Johnson, and which, "upon and immediately after his death, was to be assigned to such person or persons, for such estate or estates, and in such proportions, as would, by the intestate laws of this Commonwealth, be entitled to the same, if he had died intestate, seised thereof in fee," be now conveyed in fee, by said trustees, to Ann B. F. Johnson, adopted child and heir of Samuel B. Johnson, deceased, and that any income on hand or securities held by said trustees, and which ought of right to pass to the guardian of the said Ann B. F. Johnson, be now transferred and paid over to said guardian. Ordered further, that the costs be paid by the appellees.