## Wood's Estate.

*O. P. Robertson* and *F. C. McCutcheon*, for petitioner.
*Charles E. Munn*, for respondent.

MITCHELL, J., Nov. 26, 1928.—Samuel L. Wood died July 8, 1927, intestate, leaving to survive him his wife, Lela Blanche Wood, but no natural-born child or descendants. He did leave Mary Anna Glazier, who had been legally adopted by the decedent and his deceased wife, Sarah E. Wood. The decree of adoption was made by the Court of Common Pleas of Allegheny County on Sept. 15, 1883, and Sarah E. Wood died in the year 1900. Lela Blanche Wood, the second wife, and widow of decedent, presents her petition under the Intestate Act of June 7, 1917, P. L. 429, praying that $5000 be set aside for her and that appraisers be appointed for that purpose. Mary Anna Glazier, the adopted daughter, has filed an answer to the petition, denying the right of the

widow to the claim for $5000, on the ground that as the adopted daughter she is in the same class as issue of decedent and, therefore, the petition should be dismissed.

Section 2 *(a)* of the Intestate Act of 1917 reads as follows: "Where such intestate shall leave a spouse surviving and other kindred, but no issue, the surviving spouse shall be entitled to the real or personal estate, or both, to the aggregate value of $5000, in addition, in the case of a widow, to the widow's exemption as allowed by law; and if such estate shall exceed in value the sum of $5000, the surviving spouse shall be entitled to the sum of $5000 absolutely, to be chosen by him or her from real or personal estate, or both, and, in addition thereto, shall be entitled to one-half part of the remaining real and personal estate: Provided, that the provisions of this clause as to said $5000 in value shall apply only to cases of actual intestacy of husband or wife, entire or partial, and not to cases where the surviving spouse shall elect to take against the will of the deceased spouse."

Under the common law, adopted children were not known; their status has been established by the statutes of the different states. The meaning of the word "issue" is children or descendants of the decedent, and unless the status has been changed by enactment, an adopted child cannot be considered as issue. The intention of the section of the Intestate Act above quoted is to allow the surviving spouse the $5000 only if there is no person who as issue of the decedent would be entitled to share in his estate.

Section 16 of this act reads as follows:

"*(a)* Any minor or adult person adopted according to law and the adopting parent or parents shall, respectively, inherit and take by devolution from and through each other personal estate as next of kin and real estate as heirs, under the provisions of this act, as fully as if the person adopted had been born a lawful child of the adopting parent or parents.

"*(b)* The person adopted shall, for all purposes of inheritance and taking by devolution, be a member of the family of the adopting parent or parents. The adoptive relatives of the person adopted shall be entitled to inherit and take from and through such person to the exclusion of his or her natural parents, grandparents and collateral relatives, but the surviving spouse of such adopted person and the children and descendants of such adopted person shall have all his, her and their respective rights under this act. Adopted persons shall not be entitled to inherit or take from or through their natural parents, grandparents or collateral relatives, but each adopted person shall have all his or her rights under this act in the estates of his or her spouse, children and descendants."

It thus appears the adopted person inherits and takes by devolution from the adopting parent personal estate as next of kin and real estate as heir as fully as if he or she had been born a lawful child of the adopting parent; and the adopted one for all purposes of inheritance shall be a member of the family of the adopting parents.

In order to find the meaning of the act, all sections must be considered. It is evident the act was meant to be comprehensive and inclusive, for section 28 reads: "This act of assembly is intended as an entire and complete system for the descent and distribution of the estates, real and personal, of persons dying intestate."

In section 7, the real and personal estate not theretofore given to the surviving spouse shall descend to and be distributed among the issue of the intestate according to the rules set forth in the section. The word "issue" is used in section 2 and in section 7. Section 16 endeavors to wipe out all distinction

in inheritance between natural born and adopted children and applies to section 7. The note of the commissioners who codified and revised the law of decedents' estates informs us that section 16 is intended to cover the entire subject of inheritance by and from adopted persons. If section 16 applies to section 7, then it applies also to section 2, as the word "issue" is used in both sections 2 and 7. If this adopted child is to participate in the estate as fully as if she had been born a lawful child, her estate cannot be reduced by allowing the preference of $5000 to the widow.

We have found no case in Pennsylvania where the question before us has been decided. The courts in the various states have differed in their opinions. As is said in the note to the case of Morse v. Osborne, 30 L. R. A. 914, a decided majority of the cases hold an adopted child to be within the meaning of the words "children," "issue," etc., as used in the statutes of descent and distribution.

We have been reminded of Boyd's Estate, 270 Pa. 504. This case has nothing to do with the present case. There the testator made his will giving his entire estate to his wife. Later he adopted two minor children, and the question arose whether these adoptions operated as a revocation of the will under section 21 of the Wills Act of June 7, 1917, P. L. 403. The Supreme Court held the act applied to children "born" to the testator and the adoption did not work a revocation. The case is not analogous to the case we are now considering, nor was the right of an adopted child under section 16 of the Intestate Act considered. The effect of Boyd's decision has been changed by the Act of May 20, 1921, P. L. 937.

In Johnson's Appeal, 88 Pa. 346, where the testatrix had left her estate in trust for the benefit of her son during his life, and thereafter to such person or persons, and for such estate or estates, and in such proportions as would, by the intestate laws of this Commonwealth, be entitled to the same if he had died intestate, seized thereof in fee, the Supreme Court held the adopted child of the life-tenant on the latter's death took the estate. The decree of adoption provided "that such child shall assume the name of the adopting parent and have all the rights of a child and heir of such adopting parent." The adopted child was thereby both child and heir of her father, the life-tenant, so far as she can be made such by legislative enactment. This was affirmed in Rowan's Estate, 132 Pa. 299.

The case of Yates's Estate, 281 Pa. 178, was where an adopted child claimed to take under a testamentary trust which gave the adopting parent the income for life with remainder to such child or children as the life-tenant may leave surviving. It was held the "adopted" child was not an "actual" child and, therefore, did not take. Mr. Justice Simpson refers to section 16 (b) of the Wills Act, under which the claimant would have taken had the testator not died before the act was passed.

Puterbaugh's Estate, 261 Pa. 235, is not in point. In that case the child was not adopted by the son of the testator until after the death of testator, who had no knowledge that an adoption was contemplated. Consequently, an intention that an adopted child should inherit his estate could not be imputed to the testator. We are directed to Schafer v. Eneu, 54 Pa. 304. Of course, the right of inheritance given to an adopted child does not make him a child in fact, but the legislature may provide he shall take as a natural born child in the matter of inheritance.

In Russell's Estate, 284 Pa. 164, the adopted son of a legatee—the legatee having predeceased the testator—claimed the legacy did not lapse but was payable to him. This claim being under a will, the court held the Act of

May 28, 1915, P. L. 580, and section 16 *(b)* of the Intestate Act applied only to property passing under the intestate laws.

The Supreme Court held in Webb's Estate, 250 Pa. 179, that under the Act of May 9, 1889, P. L. 169, providing a person adopted "shall have all the rights of a child and heir of such adopting parent," it was the intention of the legislature to give the adopted person not only the status of a child but also of an heir, which would entitle him to succeed to the estate of the adopting parent. The language of section 16 *(a)* of the Intestate Act is stronger than that of the Act of May 9, 1889.

In Newman's Estate, 75 Calif. 213, it was held the word "issue" in the statute which provides that "if a decedent leaves no surviving husband or wife, but leaves issue, the whole estate goes to such issue," includes an adopted child. "If the adopted child is by virtue of status to be regarded and treated in all respects as the child of the person adopting, and is to have all the rights and be subject to all the duties of the legal relation of parent and child, the right to succeed to the estate of the deceased parent must be included."

The case of Buckley *v.* Frasier, 153 Mass. 525, is very similar to the instant case as to the facts and the statute applicable. The decedent and his wife, who never had issue born to them, adopted a child. After the death of the decedent his widow brought her petition asking that the real estate left by the decedent, being less than $5000, be assigned to her on the ground that her husband left no issue living. "Section 8 of the Pub. Sts., ch. 148, provides that the term 'child' or its equivalent in a grant, trust settlement, entail, devise or bequest shall be held to include a child adopted by the settlor, grantor or testator, unless the contrary plainly appears by the terms of. the instrument." The court held: "The general intent of the statute (Pub. Sts., ch. 148) is to place the adopted child in relation to either of his adopting parents, so far as their property is concerned, in the same position that he would be if their natural child. No stronger expression could be used than that which permits him to take the share of the property of the adopting parent 'that he would have taken if born to such parent in lawful wedlock.' That the adopted child should be deprived of that which he is given so explicitly is not readily supposable. There is less difficulty in holding that the word 'issue' is used in the sense of child or children, and as thus construed it includes adopted children. If construed otherwise, the adopted child no longer occupies the relation of a child born in lawful wedlock to either of his or her adopting parents."

It is interesting to note that the act relating to adoption, approved April 4, 1925, P. L. 127, provides the decree shall direct that the person proposed to be adopted shall have all the rights of a child and heir of such adopting parent or parents and be subject to the duties of such child. The Act of June 20, 1919, P. L. 521, and the amendment of May 4, 1921, P. L. 341, for the purpose of taxation, no longer classifies adopted children as collaterals but as lineals.

To hold that this adopted child is not to take as issue is to disregard the evident purpose of the Intestate Act and to nullify the intention of the adopting parent. It can be readily seen that in a small estate the adopted child might be deprived of everything if the prayer of the widow's petition be granted. Usually, "issue" means children and descendants. But when we read together the sections of the Intestate Act, we find no indication to so limit the inheritors of a decedent, but rather to bring adopted children into the class mentioned in the 2nd and 7th sections as "issue." This act seems to intend to provide inheritable quality in the adopted one. "Issue" and "children" have a technical meaning and import, and no legislation can transmute an

adopted child into a natural-born child. There is, however, no reason why an act of assembly may not stipulate that an adopted child shall have the same right of inheritance as the issue or child of the adoptive parents' blood.

A reading of sections 15 and 16 of the Wills Act persuades us that the commissioners who codified the laws relative to inheritance had in mind a synthetic treatment of the subject so as to relate and harmonize the Wills Act and the Intestate Act. In order to give effect to section 16, we must consider "issue" in section 15 and "child" or "children" in section 16 as meaning the same. Unless the adopted child can come within the meaning of "issue" as used in section 15 no effect can be given to section 16.

Having in mind the provisions of the two acts and reading together sections 2, 7 and 16 of the Intestate Act, we conclude that adopted children come within the classification of "issue" and "children" as used therein.

The prayer of the petition is refused and the petition will be dismissed.

TRIMBLE, J., concurring.—The decedent died intestate and left surviving him his widow, Lela Blanche Wood, and no issue. In his lifetime he and his wife became the adoptive parents of Mary Ann Glazier by decree of court. The widow, claiming $5000 from his estate under the 2nd section of the Intestate Act of 1917, as amended by the Act of July 11, 1917, P. L. 755, will be sustained unless the 16th section of the Intestate Act substitutes adopted children for existing "issue," the supposed *sine qua non* of the 2nd section.

The State, in selecting the persons who may enjoy shares in an intestate's estate, has set forth a table of distribution and descent, the Intestate Act of 1917. This shows not only issue, descendants, heirs and kindred, that is, lineals and collaterals, but also parents in the ascending line, the spouse and adopted children. The State may include or exclude whomsoever it pleases, and in the exercise of this sovereign power it has drawn from those who may or may not be in the *catena* of relationship the spouse and adopted children. The latter, in the 16th section, clauses *(a)* and *(b)* of the table, are invested with the rights of kin and heirs; they to take by devolution from and through each other personal estate as next of kin and real estate as heirs as fully as if born lawful children of the adopting parents. It not only invests them with this right to distribution, but it excludes them from the line of succession to all their cognates except their own children and descendants. Adoption makes them a new source for inheritance and takes away from them the rights which their former ties by blood gave them. It is not declared that adopted children are issue or kin or heirs, nor is that to be inferred from any loose phrasing. All that can be inferred is that the adoption of children works an exchange of family ties and makes the adopted children substitutes for children, issue, kindred and descendants and gives them rights as such.

The argument of counsel for the petitioner is that unless decedent died leaving issue and other kindred, the widow must necessarily be allowed the portion given to her in the 2nd section of the Intestate Act, to wit, $5000, because adopted children are not issue. If that is true, then it must certainly be true that if there were adopted children and no known heirs or kindred of the decedent, she would be entitled to the whole of the real and personal estate under the 17th section of the act, which provides in this way for the spouse when she survives and there is a default of known heirs or kindred. The adopted person is invested with the right to take as if he had been born a lawful child. If the adopted child is to be barred under section 2 because she is not issue of the adoptive parents, then why not under section 17 because

she is not actually an heir or of the kindred? If she cannot prevent the spouse from taking the $5000 when there is no issue, how can she prevent her from taking the whole estate when there are no heirs or kindred? Prevention in one case ought to invite consistency for the other, which would be, that because the respondent is not issue, therefore neither is she heir nor kindred, and the bestowal of rights in section 16 (a) and (b) is a nullity, at least in connection with sections 2 and 17. Now, of course, such reasoning shows the absurdity of allowing the petitioner to proceed. Section 16 of the Intestate Act was put there for a purpose, a permissible one. It substitutes a class of distributees who may or may not be of the blood of the ancestor, but are members of his family by his election and the act of the law and take as distributees. The fundamental reason for allowing this substitution is, perhaps, the same as that which allowed the widow a common law dower or the husband his curtesy and now a share varying with the rights of kindred, heirs and the adopted.

"It shall be lawful for any adult citizen of this Commonwealth, residing therein, desirous of adopting either a minor or an adult as his or her heir, to present his petition, and the court or judge shall make a decree directing that the person shall have all the rights of a child and heir of such adopting parent or parents:" Act of April 4, 1925, P. L. 127. When this last of many expressions of the legislature is read in connection with the Intestate Act of 1917, as amended, it must be concluded that an adopted person has been substituted for issue, for descendants and for kindred. If he is not, words have ensnared the legislature to make futile interrelated adoption laws and the stroke of the judicial axe will go deep into rights given under the Fiduciaries Act of June 7, 1917, P. L. 447, to children.

The petition must be dismissed.

From William J. Aiken, Pittsburgh, Pa.