## Carnegie Estate

*Wells Fay* of *Blaxter, O'Neill, Houston & Nash,* for Thomas M. Carnegie, 3rd, and Andrew Carnegie, 3rd, and Nancy Rockefeller.

*William H. Eckert* of *Eckert, Seamans & Cherin,* for Henry Carter Carnegie.

*Frank W. Ittel* of *Reed, Smith, Shaw & McClay,* for Polly ·Carnegie, individually and as executrix of the estate of Carter B. Carnegie, deceased.

*William F. Knox* of *Moorhead & Knox,* for Pittsburgh National Bank, trustee.

RAHAUSER, J., October 21, 1963.—Lucy C. Carnegie died January 16, 1916, a resident of this county. Her will is dated June 15, 1912, with codicils thereto dated January 7, 1913, and May 17, 1913. She was survived by her eight children, who are named in her will.

Her estate was a very large one, as is shown in the accounting of the executors of her estate in this court at May term, 1917, no. 156, and December term 1917, no. 91.

In addition to her very large personal estate, she was the owner of two tracts of real estate, which give rise to the present litigation. One of these tracts was the Cumberland Island property located in Camden County, Georgia, consisting of about 16,500 acres, which was used for a family home. The records of this

court show that it was a baronial estate, with numerous residences, stables, etc., reached from the mainland by yachts, making up a part of the island property. The other parcel of real estate was the Carnegie Building, located on Fifth Avenue in Pittsburgh. Its construction was completed in 1895, and it was immediately occupied by the Carnegie Steel Company, Ltd., later a part of the United States Steel Corporation, under a lease for a term of 100 years, commencing April 1, 1895. The rental provided in the lease was at the times herein relevant in excess of $70,000 per year. The lease required the tenant to pay all taxes, water, heat, light, power and to keep the premises in good order and condition, so that the same could be delivered to the owner at the end of the term "in like condition, natural wear and tear and deterioration from the elements excepted."

At the audit of the final account of one of the trusts created under Lucy Carnegie's will, the parties in interest filed a stipulation which provides, inter alia, as follows:

"*Seventh*: William Coleman Carnegie died on July 28, 1944, without issue. His wife, Alice Bell Carnegie, died on February 2, 1941.

"Frank Morrison Carnegie died on February 22, 1917, unmarried and without issue.

"George Lauder Carnegie died on November 15, 1921, leaving to survive him a wife, who has since died, and no issue.

"Andrew Carnegie, 2nd. died on June 8, 1947, leaving no wife surviving. He was survived by two children, Nancy Carnegie Rockefeller and Lucy C. Sprague Rice, both of whom are living, of age and sui juris.

"Thomas Morrison Carnegie died on September 22, 1944, leaving to survive him his wife, Virginia Beggs Carnegie, who has since died. He was survived by two children, Carter B. Carnegie and Thomas M. Carnegie,

Jr. Carter B. Carnegie died without issue on August 28, 1957. His widow, Gertrude P. Carnegie and an adopted son, Henry Carter Carnegie, survived him and are living, of age and sui juris. Letters Testamentary in the Estate of Carter B. Carnegie were granted to his widow under the name of Polly Carnegie. Said adoption was by decree dated June 18, 1956 of the Circuit Court of Florida—Second Judicial District in and for Jefferson County in Chancery. Thomas M. Carnegie, Jr. died on July 19, 1954, survived by two children, Thomas M. Carnegie III and Andrew Carnegie III, both of whom are living, of age and sui juris.

"Margaret Carnegie Ricketson died on November 24, 1927, leaving to survive her a husband who has since died. She was survived by two children, Lucy R. Ferguson, who is now living, of age and sui juris, and Oliver G. Ricketson, Jr., who died on October 17, 1952. Oliver G. Ricketson, Jr. was survived by three children, Mary Baylis Ricketson Bullard, Margaret C. R. Sprague and Oliver G. Ricketson III, all of whom are living, of age and sui juris.

"Florence Carnegie Perkins died on April 15, 1962. She was survived by two children, Margaret P. Laughlin and Coleman C. Perkins, both of whom are living, of age and sui juris.

"Nancy Carnegie Johnston died on April 7, 1954. She was survived by five children, Margaret J. Wright, Coleman C. Johnston, Lucy C. J. Graves, Thomas M. C. Johnston and Marius E. Johnston, Jr., all of whom are living, of age and sui juris.

"*Eighth*: To the best of the knowledge, information and belief of Accountant all parties having any interest in the principal or income of the trust estate are the persons now living named in paragraph Seventh hereof. . . .

"*Tenth*: Accountant, on advice of counsel, avers that under the provisions of the Will of the Decedent (see

Paragraph THIRD (d) of the First Codicil), the following persons are entitled to the shares set opposite their respective names in the balance for distribution and believes that no dispute exists with reference to the ownership of these shares:

| | |
|---|---|
| Nancy Carnegie Rockefeller | 1/10 |
| Lucy C. Sprague Rice | 1/10 |
| Thomas M. Carnegie III | 1/20 |
| Andrew Carnegie III | 1/20 |
| Mary Baylis Ricketson Bullard | 1/30 |
| Margaret C. R. Sprague | 1/30 |
| Oliver G. Ricketson III | 1/30 |
| Lucy R. Ferguson | 1/10 |
| Margaret P. Laughlin | 1/10 |
| Coleman C. Perkins | 1/10 |
| Margaret J. Wright | 1/25 |
| Coleman C. Johnston | 1/25 |
| Lucy C. J. Graves | 1/25 |
| Thomas M. C. Johnston | 1/25 |
| Marius E. Johnston, Jr. | 1/25 |

As to the remaining 1/10 share (namely, the share that Carter B. Carnegie would have taken if he had survived Florence Carnegie Perkins), conflicting claims to this share will be before the Court for its decision."

In the third paragraph of item two of the will of Lucy Carnegie, testatrix disposes of the trust property in the following language:

"In the event that the said 'Carnegie Building' and the real estate upon which the same is located is not sold as hereinabove provided before the death of the last survivor of my said named children, then, and not until then, the same shall vest absolutely in such persons and for such estate and proportions as would take the same under the intestates laws of the State of Pennsylvania had I died intestate possessed thereof, and all my named children had survived me and died

intestate, except that the husband of any of my said daughters shall be excluded from the right to any portion thereof as tenant by courtesy."

This is modified by item third (d) of the first codicil in the following language:

"(d) In the event the death of my son William Coleman Carnegie precedes that of all or any of my other children, and the said Carnegie Building and the real estate upon which same is located is not sold before the death of the last survivor of my said other children, then and not until then the same shall vest absolutely in such persons and for such estates and proportions as would take the same under the intestate laws of the State of Pennsylvania had I died intestate possessed thereof, and all my named children had survived me and died intestate possessed thereof, saving and excepting that no children of my son William Coleman Carnegie shall be entitled to any interest therein or any part thereof; nor any wife of my said son shall be entitled to any interest therein or any part thereof under said intestate laws or any other laws of said State of Pennsylvania; nor shall the husband of any of my deceased daughters have any right to any portion thereof as tenant by courtesy."

The court must decide whether Henry Carter Carnegie, the adopted child of Carter Carnegie, takes a share in the corpus of the trust above mentioned. The court is of the opinion that the said adopted child is entitled to share in the corpus of this trust.

Testatrix placed the Carnegie Building in trust for the benefit of her named children, as provided above, with the explicit provision that upon the death of the last survivor of her named children, the trust property "then and not until then . . . shall vest absolutely in such persons and for such estates and proportions as would take the same under the intestate laws of the State of Pennsylvania had I died intestate possessed

thereof, and all my named children had survived me and died intestate possessed thereof."

The claimant here, Henry Carter Carnegie, was legally adopted as an adult on June 18, 1956, in the State of Florida by Carter B. Carnegie, who was the son of Thomas Morrison Carnegie. Thomas Morrison Carnegie also had another son, Thomas Morrison Carnegie, Jr., who was survived by two sons, Thomas M. Carnegie, 3rd, and Andrew Carnegie, 3rd, both of whom are still living and opposing the claim of Henry Carter Carnegie.

In deciding whether Henry Carter Carnegie takes under the aforementioned testamentary instrument, the first question that arises is: Under what intestate act must this property be distributed?

The court is of the opinion that the intestate law in effect at the time of distribution must govern.

"In the principal case, as the testator was satisfied that the property should go as though the life tenant were an absolute owner dying intestate, he probably had no particular class of heirs or next of kin in mind; hence, the statute in force in the state of the testator's domicil at the time of distribution seems the standard applicable": 44 Harv. L. Rev. 1302-1303 (1931).

The intestate law in effect at the time of the vesting of the distributive shares of the corpus of this estate in accordance with the testamentary direction of Lucy C. Carnegie was the Intestate Act of 1947, the Act of April 24, 1947, P. L. 80. The rights of inheritance of adopted persons are set forth in section 8 of that act as follows:

"For purposes of descent by, from and through an adopted person he shall be considered the issue of his adopting parent or parents and not the issue of his natural parents: Provided, That if a natural parent shall have married the adopting parent, the adopted

person for purposes of descent by, from and through him shall also be considered the issue of such natural parent."

It is clear that under the provisions of the statute above quoted Henry Carter Carnegie, the surviving adopted son of Carter B. Carnegie, now deceased, is entitled to inherit from his adoptive grandfather, Thomas Morrison Carnegie. His adoption, in 1956, engrafted him on the family tree of his father and entitled him to the same rights of inheritance from his adoptive grandfather as though he was the natural son of his adoptive father, Carter B. Carnegie. See Bregy Intestate, Wills and Estates Acts of 1947, page 904.

Mr. Justice Mitchell, in affirming the lower court in Kohler's Estate, 199 Pa. 455, at page 457, commented on the rights of inheritance of an adopted child in somewhat similar circumstances as follows:

"The learned judge below very forcibly said: 'The will of John Kohler, father of the cestui que trust, was written thirty-six years before the decree of adoption, and that event therefore was not reasonably within the contemplation of the testator. But as he gave the estate to those persons to whom the law would give it in the case of intestacy, he cannot be said to have had any particular class of heirs or next of kin in view, and he committed the question of determining who should take to the law itself.' And it is only necessary to add that a testator who commits the distribution of his estate to the law, upon the happening of an event necessarily future, must reasonably be presumed to have contemplated the possibility of a change in the law in the meantime. McGunnigle v. McKee, 77 Pa. 81, and Johnson's Appeal, 88 Pa. 346, were decided on this principle."

The argument that Carter B. Carnegie received a vested estate in the corpus of the trust at the death of his father, Thomas Morrison Carnegie, and that he accordingly had a vested interest in the trust at the

time of his death, cannot be sustained. This would require the rewriting of the will of testatrix, i.e., the addition of the words "in possession" after the word "vest" in the paragraph of the will under consideration. The will does not mention any time of vesting except the date of death of the last survivor of the children of testatrix and it says nothing about "vesting in possession." Testatrix provides that the corpus of the trust shall vest at the death of the last survivor of her named children and she most explicitly states that the trust property then and not until then shall vest absolutely in such persons and for such estates and proportions as would take under the intestate laws of Pennsylvania.

Under the testamentary provision above referred to, the funds in dispute are to be distributed as though the right to them did not vest until April 15, 1962, the date of death of Florence Carnegie Perkins, the last survivor of the children of testatrix. Since testatrix in substance coupled the vesting of the fund with those entitled to take as though each of her named children had died intestate, possessed thereof, on April 15, 1962, this was the legal equivalent of a direction to distribute the fund as though each of her seven named children had died on April 15, 1962. This interpretation reconciles what would otherwise be contradictory directions. Without such an interpretation you would have the anomaly of a direction that the fund should go to the heirs of her seven named children under the intestate act, which would pass the fee to them, coupled with a direction that the rights of the heirs of her seven named children should not vest absolutely until the death of the last survivor of her seven named children. Accordingly, the corpus of this estate must be divided as though each of the seven named children of Lucy C. Carnegie died on April 15, 1962, the date of death of Florence Carnegie Perkins, intestate, possessed of a

1/7th interest in the corpus of the estate of Lucy C. Carnegie.

If Thomas Morrison Carnegie, one of the seven named children of the testatrix, had died on April 15, 1962, both his sons would have predeceased him and his closest living relatives would have been his three grandchildren. For this reason, we do not believe that either Pauline Carnegie or the Estate of Carter Carnegie has an interest in the fund for distribution. Section 3 of the Intestate Act of 1947 provides as follows:

"Shares of Others Than Surviving Spouse. The share of the estate, if any, to which the surviving spouse is not entitled, and the entire estate if there is no surviving spouse, shall descend in the following order:

"(1) Issue. To the issue of the decedent. . . ." The issue of Thomas Morrison Carnegie in whom these funds vested on April 15, 1962 were his three grandchildren, Thomas M. Carnegie, 3rd and Andrew Carnegie, 3rd, sons of Thomas M. Carnegie, Jr., deceased, and Henry Carter Carnegie, the adoptive son of Carter H. Carnegie.

Inasmuch as the issue of Thomas M. Carnegie are in the same degree, the Rules of Descent under the Intestate Act of 1947, as amended, Act of July 10, 1957, P. L. 623, sec. 4 (1.1), provide how such property shall be distributed. This section provides:

"Taking in Same Degree. When persons entitled to take under this act other than as a surviving spouse are all in the same degree of consanguinity to the decedent, they shall take in equal shares."

Accordingly, the 1/7th share being distributed as though it belonged to Thomas Morrison Carnegie will be divided 1/3rd to Andrew Carnegie, 3rd, 1/3rd to Thomas Carnegie, 3rd, and 1/3rd to Henry Carter Carnegie.

Out of the 1/7th share being distributed as though it belonged to Frank Morrison Carnegie, another of the children of Lucy C. Carnegie, Andrew Carnegie, 3rd, and Thomas Carnegie, 3rd, the children of Thomas M. Carnegie, Jr., deceased, are each entitled to 1/182 of the corpus of the trust, and Henry Carter Carnegie, the adopted son of Carter B. Carnegie, is entitled to 1/91 of said corpus.

Likewise, out of the 1/7th share being distributed as though it belonged to George Lauder Carnegie, another of the seven named children of Lucy C. Carnegie, Andrew Carnegie, 3rd and his brother Thomas Carnegie, 3rd, are each entitled to 1/182 of the corpus of the trust, and Henry Carter Carnegie is entitled to 1/91 of said corpus. . . .

A decree will be prepared in accordance with this opinion.